IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| BILL JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 5:11-cv-06026-DGK |
| ) | |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING DEFENDANT SUMMARY JUDGMENT

This lawsuit arises in the wake of Plaintiff Bill Jones' termination from employment with Defendant United Parcel Service ("UPS"). Jones alleges UPS discriminated against him, and eventually fired him, for exercising his rights under the Missouri Workers' Compensation Act.

Now before the Court is Defendant's Motion for Summary Judgment (Doc. 47). Finding that Jones cannot establish the elements of a retaliatory discharge or discrimination claim under the Act, Defendant's motion is GRANTED.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).

When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the

benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted). But the "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks omitted). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## Factual Background

For purposes of resolving the pending motion, the Court finds the uncontroverted material facts are as follows.

**1.      Jones' UPS work assignment and supervisors**

On September 8, 1981, UPS hired Plaintiff Bill Jones as a package car driver at its St. Joseph, Missouri facility. As a package car driver, Jones picked up and delivered packages to UPS customers on a pre-determined route.

At the St. Joseph facility, UPS management consists of on-road supervisors, business managers, and a division manager. The package car drivers report to the on-road supervisors, the on-road supervisors report to the business managers, and the business managers report to the division manager. At the St. Joseph facility, there was one business manager who reported to the division manager.

From December 2008 through October 2010, Travis Hinspeter was the business manager for the St. Joseph facility. Hinspeter became a business manager in order to move upward in UPS management. If a business manager is not meeting the goals set by UPS, he or she will be

held accountable and subjected to additional oversight by the division manager. Jones intimates that Hinspeter's actions in this case were motivated by a desire to please his superiors by lowering the reported injury rate at the St. Joseph facility.

In 2010, UPS had a goal to have not more than 4.4 injuries per 200,000 hours worked. When Hinspeter was the St. Joseph Business Manager, the rate for injuries was as high as 10 injuries per 200,000 hours worked. After serving as the business manager at the St. Joseph facility, he went on to become the business manager for two UPS facilities in Kansas.

Beginning in 2009, and up through May 2010, Johnny Miller was the division manager for the St. Joseph facility.

**2.     Union grievance procedures and Union officials**

Article 17(i) of the CBA provides that an employee may be immediately terminated without progressive discipline for "other serious offenses." In determining whether to reduce a package driver's potential termination to a suspension, a driver's length of service and prior service history is reviewed.

The CBA also contains a grievance procedure which employees must use to challenge any violation of the CBA by UPS. Once an employee submits a grievance, a local hearing is held regarding the grievance between UPS and the Union. If the grievance is not resolved at the local hearing, the grievance is then presented to the UPS Joint Area Committee, commonly called the Mo-Kan panel. The Mo-Kan panel consists of an equal number of representatives from the Union Local and UPS. The persons who comprise the Mo-Kan panel differ depending on which local union is involved and in which state the UPS facility is located.

Union employees may be represented at the local hearing and at any Mo-Kan hearing by Union business agents and/or Union stewards. Both business agents and stewards are familiar with the CBA's provisions.

Roger Mann was a UPS package car driver at the St. Joseph facility from 1981 through May 2010. In 1984, he became the Union Steward for the St. Joseph package car drivers. Mann almost always represents package car drivers in termination hearings. The only time he was not allowed to attend a Mo-Kan hearing for a terminated driver was when Hinspeter prevented Mann from attending the Mo-Kan panel hearing Jones' dispute concerning his April 2010 termination.

### 3. Jones' work-related injuries at UPS

Jones worked for UPS for approximately 28 ½ years as a package car driver. During his employment with UPS, Jones reported the following work-related injuries for which he filed workers' compensation claims. Jones reported injuries from motor vehicle accidents on May 30, 1986, and on February 10, 1992. On July 6, 1993, Jones injured his right wrist in a work-related injury. On September 21, 1995, Jones injured his hands while opening the bulkhead door of a package car. On January 27, 2004, Jones fell on ice while at work, injuring his left shoulder and left lower back. A year later, on January 14, 2005, Jones injured the same shoulder after again falling on ice. On July 29, 2005, Jones suffered a head injury when a letter box door hit his head. On August 29, 2005, Jones injured his wrist while driving his package car.

On December 2, 2009, a dog bit Jones as he was delivering a package. Jones called Business Manager Travis Hinspeter to report the bite, and Hinspeter berated Jones, blaming Jones for the injury. Hinspeter also pressured Jones to keep working because UPS was short handed at the time. Jones decided to keep working.

On December 28, 2009, Jones began receiving medical treatment for the bite. That same day, Jones was placed on modified duty and restricted from performing work above the height of his left shoulder. He remained on modified duty until he was released to regular duty with no restrictions on February 2, 2010.

On January 4, 2010, Jones was involved in a motor vehicle accident while driving his package car. Jones was not responsible for the accident. At the time, on-car supervisor Dana Weaver happened to be on board accompanying Jones for an annual training ride. After the accident, Jones did not tell Weaver that he was injured or that he had aggravated any previous injuries, nor did Jones ask for medical attention.

**4.     Jones' modified duty between December 28, 2009 and February 2, 2010**

Jones' package car was totaled in the January 4, 2010 accident, and UPS had to assign him a replacement package car. Package cars come in different lengths and sizes. The size of the package car assigned to a driver is typically based upon the volume of packages to be delivered on that driver's particular route. The package car assigned to Jones was a model P1000.

For two days following the accident, while it was being investigated, Jones chose to work inside the building unloading packages. He then resumed his package car driver duties and was given a replacement package car which was similar to, but one and a half times taller, than the previously assigned package car. The replacement package car had a mechanical brake on the left side of the steering wheel, the same side as his injured shoulder, which aggravated Jones' previous injuries. After about three or four weeks, this replacement car experienced mechanical problems and was removed from service.

Jones received a second replacement vehicle around the beginning of February 2010. It was a package car no other driver wanted. It was not a P1000, but UPS had no other unassigned P1000 package cars available. Jones complained to Hinspeter that the second replacement vehicle had a higher step and no power steering.

The parties agree that UPS could have reassigned another driver a smaller package car and provided Jones with a package car large enough to meet the requirements of his route, it could have reduced the number of stops on Jones' route, or it could have requested another package car from a different center. Although UPS typically replaces a package car with the best car available, UPS does not typically take a package car that is already assigned to one route and reassign it as a replacement vehicle on another route.

Approximately one to two weeks after Jones received his second replacement vehicle, Jones received a third replacement vehicle, a P1000 that had been repaired at the St. Joseph facility which had a lower step and power steering.

Hinspeter knew that Jones had been placed on modified duty from December 28, 2009 to February 2, 2010 which restricted him from performing work above shoulder height with his left arm. To accommodate his restrictions, Jones asked to have his package car loaded so that there would not be heavy packages on the top shelf. The parties dispute to what degree these medical restrictions were accommodated.

On or about February 2, 2010, Jones was cleared to return to work with no restrictions.

**5.  Jones' April 2010 termination**

On April 20, 2010, a customer approached UPS package car driver Aaron Hays while he was delivering a package. The customer claimed she had been told by a neighbor that another

6

UPS driver had taken photographs of her children jumping on a trampoline. She was told that some of the children were wearing no clothing and some wearing only underwear.

Hays telephoned Hinspeter and relayed the allegations. Hinspeter contacted the customer to verify the information and then notified Division Manager Johnny Miller.[1] Miller instructed Hinspeter to contact UPS' security department and let them investigate the allegations.

Hinspeter did so, and UPS security supervisors Stephanie McDaniel and Joe Oberle performed an investigation that same day. Prior to arriving at the St. Joseph facility, McDaniel spoke with both parents of the children whose photographs were believed to have been taken. The parents claimed they were concerned for the safety of their children.

At some point, UPS personnel determined that the incident occurred on Jones' route. Upon arrival at the St. Joseph facility, McDaniel and Oberle contacted Hinspeter, and then, along with on-car supervisor Dana Weaver, picked-up Jones who was still on his route and brought him back to the St. Joseph facility to interview him about the allegations. Jones was interviewed in the presence of Union Steward Roger Mann and Business Manager Travis Hinspeter.

Jones was cooperative throughout the investigation. During his interview, Jones said that while delivering a package on April 9, 2010, he observed several children playing on a trampoline at the customer's house. He said the children were in their underwear and one "might" have been nude. He acknowledged taking a photograph of the children with a disposable camera that he had in his package car. He also acknowledged subsequently speaking with a neighbor.

---

[1] Plaintiff objects to the Court's consideration of any testimony regarding what the customer stated or what the customer alleged the neighbor stated, noting that UPS cannot rely on hearsay in its motion for summary judgment. The Court does not consider the statements for the truth of the matter asserted, but only to explain why UPS subsequently took the actions it took.

At UPS' request, the mother of the children and the neighbor whom Jones spoke with after he took the photograph, provided written statements. In her statement, the neighbor alleged that Jones had told her that he had seen kids jumping on the trampoline, and that some were wearing underwear and some were wearing no clothing.[2] Jones then showed the neighbor his disposable camera and said something to the effect of, the joke's on them, I've got pictures.

Jones acknowledges speaking with the neighbor, but claims he also told the neighbor something like, it never ceases to amaze me after 28 years [on the job] that you [still] see cute and funny things.

On April 20, 2012, Jones gave the disposable camera to security supervisor Oberle. The camera was turned over to the St. Joseph Police Department, and security supervisor McDaniel wrote a report summarizing the investigation. Neither McDaniel nor Oberle attempted to develop the film to view the pictures on the camera.

That same day, April 20th, Hinspeter discussed the investigation with his supervisor, Johnny Miller, and Diane Wheeler of the UPS labor department. Miller understood that the information Hinspeter had relayed to him had been substantiated by security supervisor McDaniel. Miller's understanding was that Jones, while on a route and representing UPS, had taken photographs of a customer's children on a trampoline, some who were nude and some who were partially clothed. Miller also understood that Jones had told another customer that he had photographed them, and that the mother of the children was distraught.

Hinspeter and Miller decided to terminate Jones pursuant to Article 17(i) of the CBA. Miller testified that the decision to terminate Jones pursuant to Article 17(i) was based on the totality of Jones' behavior, which Miller described as stealing time, taking inappropriate photos

---

[2] In his deposition, when asked "And you told [the neighbor] that there were kids wearing underwear and some that were wearing no clothing?" Jones answered, "Yes." Jones deposition 240:23-241:1.

while using a UPS vehicle, and boasting about it to another customer, all of which he determined was detrimental to the UPS brand.

That same day, April 20, UPS terminated Jones. Before he left the building, Jones filed a grievance protesting his termination.

Jones' grievance was heard at a local hearing where he was represented by Clint Long, a Union business agent. A Mo-Kan panel also heard Jones grievance. Jones was represented at this hearing by Long. The Mo-Kan panel upheld Jones' termination. At the time of the Mo-Kan panel hearing, Jones had custody of the photographs that had been developed from the disposable camera. The photographs were not shown at the hearing.

On June 14, 2010, Jones filed a workers' compensation claim for injuries he alleged occurred on December 2, 2009 as a result of the dog bite and for injuries he alleges he incurred in the January 4, 2010 car accident.

On July 23, 2010, Jones filed a charge of discrimination with the Missouri Commission on Human Rights alleging disability and age discrimination for wrongful termination and failure to accommodate. Jones believes he should have been suspended for his conduct on April 9, 2010 rather than terminated.

## Discussion

Missouri adheres to the "at will" employment doctrine which allows an employer to fire an employee who does not have a durational contract for any reason or no reason. *Amaan v. City of Eureka*, 615 S.W.2d 414, 415 (Mo. banc 1981). Missouri's Workers' Compensation Act, however, provides a limited exception to the "at will" employment doctrine. It provides that:

> No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.

9

Rev. Stat. Mo. § 287.780. To establish a cause of action under the statute a plaintiff must show: (1) that he was an employee before the injury occurred; (2) that he exercised a right granted by the statute; (3) the employer's discharge of, or discrimination against, the employee; and (4) an *exclusive* causal relationship between the employee's actions and the employer's actions. *Crabtree v. Bugby*, 967 S.W.2d 66, 70 (Mo banc 1998) (emphasis added). "Proof of such exclusive causation is necessarily indirect because the employer is not likely to admit that retaliation was his motive." *St. Lawrence v. T.W.A., Inc.*, 8 S.W.3d 143, 150 (Mo. Ct. App. 1999). That said, "such causation does not exist if the basis for the discharge is valid and nonpretextual." *Id.* at 149. "If the evidence demonstrates that the employer had just cause for terminating the employment . . . then the employee cannot recover under section 287.780." *Id.*

Although Jones' Complaint contains only one count, he appears to be asserting two separate violations of the statute, a claim for retaliatory discharge and a claim for discrimination. The Court finds no merit to either claim.

I.      **Jones cannot establish the exclusive causal relationship element of a retaliatory discharge claim.**

UPS asserts it is entitled to summary judgment on Jones' retaliation claim because it terminated Plaintiff for photographing nude pictures of a customer's children while on his route, thus Jones cannot show his discharge was exclusively caused by the exercise of any right under the Act. The relevant, undisputed facts here prove that Jones saw several children playing on a trampoline outside of a residence at which he had just delivered a package. The children were in their underwear and one "might" have been nude. Jones took a photograph of them. He then told the next customer on his route that he had taken a picture of the kids and that one of them was nude. This customer was upset. She told other customers Jones had taken a picture of a

nude child. When the child's mother learned what Jones had supposedly done, she also became upset. These facts gave Division Manager Johnny Miller and Business Manager Travis Hinspeter a valid reason to conclude that Jones' conduct was, at the very least, detrimental to the UPS brand. This establishes just cause to terminate Jones such that he cannot meet his burden of showing exclusive causation.

Even if UPS lacked just cause to terminate Jones, Jones cannot show sufficient temporal proximity between the last time he exercised his rights under the statute and his termination to establish an inference that the former caused the latter. The last time Jones actually exercised his rights under Missouri's Workers' Compensation Act was in August of 2005, but he was not terminated until April 20, 2010. (As discussed below, reporting an injury-causing event, such as the dog-bit, is not exercising a right under the statute.) He did not report any other worker's compensation claims until June of 2010, after he was terminated. The five year delay between 2005 and 2010 is too long to establish a reasonable inference that his termination was in retaliation for exercising his rights.

Consequently, UPS is entitled to summary judgment on the retaliatory discharge claim.

## II. The acts alleged by Jones are insufficient to establish a discrimination claim under the statute.

To establish a claim for discrimination under § 287.780, a plaintiff must establish the same four elements as a claim for retaliatory discharge. *Crow v. Crawford & Co.*, 259 S.W.3d 104, 118 (Mo. Ct. App. 2008). With respect to establishing discrimination, the third element, the law provides that "[d]iscrimination can take a variety of forms, including denying the employee advancement, salary or hourly pay increases, assignment to less desirous jobs or locations, etc." *Id*. A challenged employment action is adverse if it materially and adversely alters the terms or

11
Case 5:11-cv-06026-DGK   Document 72   Filed 10/15/12   Page 11 of 16

conditions of the employee's employment. *Buerhle v. City of O'Fallon*, No. 4:10-CV-0509-AGF, 2011 WL 2708495, at *12 (E.D. Mo. July 12, 2011).

### A. Hinspeter's verbal abuse of Jones and blaming Jones for his injuries are not actionable discrimination.

In the present case, Jones alleges that Hinspeter called him "stupid," among other things, and berated him for suffering a work-related injury. While this name-calling was obviously unpleasant, it is not actionable because it did not materially alter the terms or conditions of Jones' employment. It is well-established that "not everything that makes an employee unhappy is an actionable adverse action." *Id*. Similarly, Hinspeter's blaming Jones for the work-related injuries he sustained, even though the injuries were not Jones' fault, is not actionable, because this by itself did not materially alter the terms or conditions of Jones' employment.

But, even if these acts were actionable, Jones cannot show that they were exclusively caused by the exercise of Jones' rights under § 287.780. According to Jones, the verbal abuse and blaming occurred when he reported the dog bite to Hinspeter on December 2, 2009. But reporting an injury-causing event is not exercising a right under the statute. Only by filing a worker's compensation claim would Jones have been exercising his rights under the statute. *See St. Lawrence*, 8 S.W.3d at 150. Jones, however, did not file a worker's compensation claim in connection with the dog bite until June 2010—months after he had been terminated, so the verbal abuse could not have been caused by filing the claim.

### B. Jones cannot show he was subject to greater discipline.

Next, Jones claims he was discriminated against because he was subject to greater discipline than he otherwise would have been if he not exercised his rights under the statute. There is no merit to this claim. The only disciplinary action UPS took against Jones after he reported the dog bite on December 2, 2009 occurred four and a half months later when UPS terminated Jones for photographing the children. There is no evidence in the record that Jones was treated any differently than any similarly situated employee. That is, there is no evidence

13

that any other employee, even one like Jones who had rarely been disciplined in 28 years with the company, would not have been terminated for similar conduct.

### C. The assignment of the replacement package car is not actionable discrimination.

Jones also contends that UPS's failure to provide him with an "adequate" package car, that is, one that did not aggravate his pre-existing injuries, is actionable discrimination under the statute. UPS argues it is not actionable discrimination because there were no adequate unassigned replacement package cars available. UPS also contends that Jones cannot show that any failure to provide an "adequate" replacement package car was caused by the exercise of his workers' compensation rights.

Assuming for the sake of argument that an adequate replacement car could have been provided, for example, by reassigning a working P1000 from another driver's route to Jones' route, Jones cannot demonstrate that UPS's failure to do so was caused by or motivated by Jones' exercise of any statutory right to workers' compensation. It is clear from the record that Jones was not assigned a P1000 as a replacement because one was not available, and that once one became available, it was assigned to him. If Jones could show that under UPS policy he was entitled to the best car available, even if that car was already assigned to another driver, and that this policy was not followed immediately after he filed his workers' compensation claim, the result might be different. But the existing facts cannot support a jury finding that the exclusive cause of UPS's failure to provide Jones with a better replacement package car was his filing a worker's compensation claim.

**D.      The Court lacks subject matter jurisdiction over the remaining claims.**

Finally, the Court holds it lacks subject matter jurisdiction over Jones' remaining claims that UPS interfered with his attempts to obtain medical treatment or forced him to do work he was medically unable to perform.

Jones claims that Business Manager Travis Hinspeter interfered with his attempts to obtain medical treatment and forced him to perform work Hinspeter knew Jones could not do because of his injuries, including loading and unloading packages above the height of his shoulder.  Missouri's workers' compensation law, however, provides the exclusive remedy for these wrongs.  Missouri's "Workers' Compensation Law is wholly substitutional in character and . . . any rights which a plaintiff might have had at common law have been supplanted and superseded by the act, if applicable." *Killian v. J&J Installers, Inc.*, 802 S.W.2d 158, 160 (Mo. banc 1991) (internal quotation omitted).  The determination of what type of care is reasonable under the circumstances lies within the exclusive domain of the Workers' Compensation Division.  *Felts v. Ford Motor Co.*, 916 S.W.2d 798, 801 (Mo. Ct. App. 1995).  Here, as in *Felts*, the determination whether UPS should have authorized Jones to see a doctor for the injuries he sustained on December 2, 2009 sooner than December 28, 2009 necessarily requires a determination whether UPS was obligated to provide this medical care.  Thus, Jones' claims are workers' compensation claims that fall within the exclusive province of the Division of Workers' Compensation.  *See id*. at 802; *see also Wiley v. Shank & Flattery, Inc.*, 848 S.W.2d 2 (Mo. Ct. App. 1992) (dismissing plaintiff's suit for common law tort finding that exclusive remedy for plaintiff's claims was under workers' compensation law).  Accordingly, this court lacks subject matter jurisdiction over these claims.

## Conclusion

For the reasons discussed above, Defendant's motion for summary judgment (Doc. 47) is GRANTED. The remaining pending motions in this case are DENIED AS MOOT.

**IT IS SO ORDERED.**

Date:   October 15, 2012                          /s/ Greg Kays
                                                  GREG KAYS, JUDGE
                                                  UNITED STATES DISTRICT COURT